UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JAMES L. GAGAN, | ) |
| Plaintiff/Judgment Creditor, | ) |
| v. | ) Case No. 2:87-cv-732 |
| JAMES A. MONROE, SBC CABLEVISION, *et al.*, | ) |
| Defendants/Judgment Debtors. | ) |

ORDER AND OPINION

This matter is before the court on the Motion for Finding of Contempt and Sanctions and to Compel Discovery [DE 709] filed by the plaintiff, James L. Gagan, on August 5, 2014, the Motion to Stay Discovery [DE 711] filed by the defendant, James A. Monroe, on August 19, 2014, and the Motion to Provide Accounting and for Partial Satisfaction of Judgment [DE 714] filed by Monroe on September 23, 2014. For the following reasons, the Motion for Finding of Contempt and Sanctions and to Compel Discovery [DE 709] is **GRANTED in part and DENIED in part**, the Motion to Stay Discovery [DE 711] is **DENIED**, and the Motion to Provide Accounting and for Partial Satisfaction of Judgment [DE 714] is **DENIED**.

*Background*

On June 20, 1994, the court entered a judgment against the defendants in the amount of $1,710,000.00 plus post-judgment interest at the rate of 5.31%. Since 1994, the plaintiff, James L. Gagan, has attempted to collect the judgment in multiple jurisdictions including California, Nevada, Oklahoma, Pennsylvania, and Arizona. He filed a Motion for Proceedings Supplemental on September 10, 2012 in this court. On September 11, 2012, the court granted the motion and ordered the defendant, James A. Monroe, to appear on October 16, 2012 for

questioning and to respond to Gagan's discovery requests at least seven days before the October 16, 2012 hearing.

On the morning of the October 16, 2012 hearing, Monroe filed a Motion to Dismiss Proceeding Supplemental, which the court denied and rescheduled the Proceeding Supplemental hearing for December 17, 2012. On December 14, 2012, Monroe moved to continue the December 17, 2012 hearing. The court denied the motion, and Monroe failed to appear at the December 17, 2012 hearing or the January 3, 2013 hearing to show cause why he did not appear at the December 17, 2012 hearing. Ultimately, the court issued a bench warrant, and Monroe was arrested and appeared on June 3, 2013 for the Proceeding Supplemental hearing.

Gagan alleges that Monroe has failed to respond to the written discovery requests. Gagan further states that his counsel contacted Monroe's counsel on April 9, 2014 regarding the outstanding written discovery and that Monroe's counsel wrote on April 11, 2014 that he would respond to the discovery requests. However, Gagan contends that he has not received a discovery response from Monroe.

Monroe admits that the court ordered him to answer outstanding written discovery on June 3, 2013, but that he did not answer because settlement negotiations were ongoing and continued for several months following the hearing. Additionally, Monroe states that he received no requests for the outstanding discovery following the June 3, 2013 hearing until April 7, 2014.

In 1999, Gagan filed an action in an Arizona federal court, *Gagan I*, to collect this court's 1994 judgment. On May 31, 2013, Gagan filed a second action in an Arizona federal court, *Gagan II*, for fraudulent transfers of funds. On October 24, 2013, Monroe filed a motion to dismiss *Gagan I* for lack of jurisdiction. On December 9, 2013, Judge Robert Broomfield, who

presides over *Gagan I*, transferred *Gagan II* to his court and stayed discovery in *Gagan II* pending the motion to dismiss in *Gagan I*. On December 30, 2013, Judge Broomfield stayed discovery in *Gagan I*, thus staying discovery in both Arizona matters while the motion to dismiss was pending. On March 18, 2014, Judge Broomfield dismissed *Gagan I* for lack of jurisdiction because Gagan failed to timely renew his judgment, but *Gagan II* is still pending.

On April 7, 2014, Monroe's counsel received a subpoena that was served on Monroe's accountant in Arizona. Gagan served the same subpoena on Monroe's accountant in *Gagan I* in November 2013, and the Arizona court quashed the subpoena on December 30, 2013. Under Federal Rule of Civil Procedure 45, Monroe's accountant needed to produce responsive documents in Phoenix, Arizona. Monroe filed a Motion for Sanctions in the Arizona federal court against Gagan for pursuing discovery through the Northern District of Indiana action. Additionally, Monroe moved to quash the Indiana subpoena because the Arizona federal court had stayed discovery in *Gagan I & II* while deciding a motion to dismiss for lack of jurisdiction.

On June 25, 2014, Gagan served Monroe with requests for production of documents. Gagan has not received a response to the requests for production of documents. Gagan's counsel discussed the requests for production with Monroe's counsel, but the parties did not reach an agreement to provide a response.

On September 10, 2012, Gagan filed an Emergency Motion to Enjoin Transfer of Assets or, Alternatively, Request for Temporary Injunction and Request for Expedited Hearing. In that motion, Gagan alleged that Monroe had assets located in multiple states. On September 21, 2012, this court issued an Order enjoining Monroe from "in any way transferring, encumbering, assigning, releasing, forgiving, and/or disposing of any or all of" his assets. [DE 660]. Gagan alleges that, on September 20, 2012, Monroe withdrew $115,000 from his Oklahoma BancFirst

account via $5,000 in cash, three separate $30,000 cashier checks, and one $20,000 cashier check. Gagan further claims that, on October 16, 2012, Monroe filed a sworn, notarized Affidavit indicating that he had no assets of value, no prospects for obtaining assets, and no means to travel from Arizona to Indiana while possessing $110,000 worth of BancFirst cashier checks. Gagan argues that Monroe then engaged in multiple transactions with Kimberly Sullivan and Lajunta Daniels, Monroe's daughters, to transfer and dissipate the entire $115,000 to his daughters and to avoid Gagan's collection efforts.

Monroe alleges that he paid the $115,000 in question as part of a $175,000 payment deposited with the Clerk in this action after the proceeding supplemental hearing on June 3, 2013. Monroe claims he used some of the $115,000 BancFirst funds for living expenses, but he retained the rest in a home personal safe in Arizona. Furthermore, Monroe indicates that any funds transferred or dissipated in transactions with his daughters were paid back before he submitted the $175,000 payment deposited with the Clerk.

In addition to the $175,000 payment, Monroe deposited $42,503.73 from Massachusetts Mutual Life Insurance Company with the Clerk in June 2013. Furthermore, Gagan has gained a receivership, charging order, and order for levy/sale/or turnover of Monroe's interests in multiple business enterprises including Beta Tech Communications, Inc., Westcom Cable Vision, Gila River Cablevision, Inc., Salt River Cablevision, LLC, Comet Communications, LLC, SBC Cablevision East, LP, Crestmore Cablesvision, LLP, Monroe Consulting & Engineering, and Monroe-Perry Company. Gagan also obtained a turnover order for $120,000 owed to Monroe by Central Arizona Communications and a Writ of Execution that allowed him to execute on Monroe's personal residence and ultimately led to the home's sale in November 2006. Monroe

believes that Gagan has pursued and collected funds from the estate of Co-Defendant Victor Sharar and pursued collections against the defendants' real property in other jurisdictions.

Gagan alleges that Monroe has transferred or dissipated additional sums of money to avoid collection. Gagan claims that Monroe spent over $117,000 on a home remodeling project in 2006 and paid Arizona attorney David Carmichael over $105,000 in recent years. Additionally, Gagan alleges that Monroe transferred money to himself, withdrew $240,447.91 from Ally Bank in January 2012, on April 27, 2012, wired $119,000 to his daughter, Kimberly Sullivan, provided approximately $100,000 to Sullivan to establish a Texas cable business, and transferred $10,000 to another daughter in January 2013. Gagan claims that over $2,000,000 remains unpaid including interest.

*Discussion*

Gagan requests the court to sanction Monroe by requiring him to respond to written discovery requests originally ordered in September 2012 and to compel Monroe to answer written discovery requests served on June 25, 2014. Monroe argues that Gagan's discovery requests are an attempt to circumvent the Arizona court's order to stay discovery and that allowing Gagan to proceed would create a conflict among the courts. Therefore, Monroe requests the court to deny both the motion to sanction and the motion to compel discovery and to grant a stay of discovery.

The court has incidental power to stay proceedings, which stems from its inherent power to manage its docket. **Landis v. North American Co.**, 299 U.S. 248, 254-55, 57 S. Ct. 163, 166, 81 L. Ed. 153 (1936); **Walker v. Monsanto Co. Pension Plan**, 472 F. Supp. 2d 1053, 1054 (S.D. Ill. 2006). The decision to grant a stay is committed to the sound discretion of the court and must be exercised consistent with principles of fairness and judicial economy. **Brooks v. Merck**

*& Co.*, 443 F. Supp. 2d 994, 997 (S.D. Ill. 2006); ***Rutherford v. Merck & Co.***, 428 F. Supp. 2d 842, 845 (S.D. Ill. 2006); ***George v. Kraft Foods Global, Inc.***, 2006 U.S. Dist. LEXIS 92886, *4 (S.D. Ill. Dec. 22, 2006). "Courts often consider the following factors when deciding whether to stay an action: (i) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (ii) whether a stay will simplify the issues in question and streamline the trial, and (iii) whether a stay will reduce the burden of litigation on the parties and on the court." ***Abbott Laboratories v. Matrix Laboratories, Inc***., 2009 WL 3719214, *2 (N.D. Ill. Nov. 5, 2009). "The general test for imposing a stay requires the court to 'balance interests favoring a stay against interests frustrated by the action' in light of the 'court's paramount obligation to exercise jurisdiction timely in cases properly before it.'" ***SanDisk Corp. v. Phison Electronics Corp***., 538 F. Supp. 2d 1060, 1066 (W.D. Wis. 2008) (citing ***Cherokee Nation of Oklahoma v. United States***, 124 F.3d 1413, 1416 (Fed. Cir. 1997)). The moving party must show good cause to stay discovery. ***Castrillon v. St. Vincent Hospital and Health Care Center, Inc***., 2011 WL 4538089, *1 (S.D. Ind. Sept. 29, 2011) (applying Rule 26(c) good cause standard to motion to stay); ***DSM Desotech, Inc. v. 3D Systems Corp***., 2008 WL 4812440, *1 (N.D. Ill. Oct. 28, 2008) (same).

Monroe argues that the court should stay discovery in this matter and deny Gagan's motion for contempt and sanctions and to compel discovery because the Arizona court stayed discovery in both Arizona cases. The Arizona court stayed discovery while deciding whether it retained jurisdiction, but the court has since determined that it lacked jurisdiction in the Arizona collection case and dismissed the case. Because the Arizona court dismissed for lack of jurisdiction and not for a substantive reason, Monroe has not shown how allowing discovery in this matter will conflict with the Arizona court. This court already determined that it has

jurisdiction over the collection matter, and the Arizona court's decision does not affect this court's decision. Therefore, Monroe's request to stay discovery is **DENIED**.

By denying Monroe's request to stay discovery, the court must decide whether to grant Gagan's motion to compel discovery and to sanction Monroe and require him to answer the outstanding written discovery request. A party may "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things." **Federal Rules of Civil Procedure 26(b)(1)**. For discovery purposes, relevancy is construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Chavez v. DaimlerChrysler Corp.,* 206 F.R.D. 615, 619 (S.D. Ind. 2002) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S. Ct. 2380, 2389, 57 L. Ed. 2d 253 (1978)). Even when information is not directly related to the claims or defenses identified in the pleadings, the information still may be relevant to the broader subject matter at hand and meet the rule's good cause standard. *Borom v. Town of Merrillville*, 2009 WL 1617085, *1 (N.D. Ind. June 8, 2009) (citing *Sanyo Laser Prods., Inc. v. Arista Records, Inc.*, 214 F.R.D. 496, 502 (S.D. Ind. 2003)); *see Adams v. Target*, 2001 WL 987853, *1 (S.D. Ind. July 30, 2001) ("For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."); *Shapo v. Engle*, 2001 WL 629303, *2 (N.D. Ill. May 25, 2001) ("Discovery is a search for the truth.").

A party may seek an order to compel discovery when an opposing party fails to respond to discovery requests or has provided evasive or incomplete responses. **Federal Rules of Civil Procedure 37(a)(2)-(3)**. The burden "rests upon the objecting party to show why a particular discovery request is improper." *Gregg v. Local 305 Ibew*, 2009 WL 1325103, *8 (N.D. Ind.

May 13, 2009) (citing *Kodish v. Oakbrook Terrace Fire Protection Dist.*, 235 F.R.D. 447, 449-50 (N.D. Ill. 2006)); *McGrath v. Everest Nat. Ins. Co.*, 2009 WL 1325405, *3 (N.D. Ind. May 13, 2009) (internal citations omitted); *Carlson Restaurants Worldwide, Inc. v. Hammond Professional Cleaning Services*, 2009 WL 692224, *5 (N.D. Ind. March 12, 2009) (internal citations omitted). The objecting party must show with specificity that the request is improper. *Cunningham v. Smithkline Beecham*, 255 F.R.D. 474, 478 (N.D. Ind. 2009) (citing *Graham v. Casey's General Stores*, 206 F.R.D. 253, 254 (S.D. Ind. 2002)). That burden cannot be met by "a reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." *Cunningham*, 255 F.R.D. at 478 (citing *Burkybile v. Mitsubishi Motors Corp.*, 2006 WL 2325506, *6 (N.D. Ill. Aug. 2, 2006)) (internal quotations and citations omitted). Rather, the court, under its broad discretion, considers "the totality of the circumstances, weighing the value of material sought against the burden of providing it, and taking into account society's interest in furthering the truth-seeking function in the particular case before the court." *Berning v. UAW Local 2209*, 242 F.R.D. 510, 512 (N.D. Ind. 2007) (examining *Patterson v. Avery Dennison Corp.,* 281 F.3d 676, 681 (7th Cir. 2002)) (internal quotations and citations omitted); *see Hunt v. DaVita, Inc.*, 680 F.3d 775, 780 (7th Cir. 2012) (explaining that the district court has broad discretion in supervising discovery).

Monroe again relies on the Arizona court's decision to stay discovery to argue that this court should not compel him to respond to Gagan's June 25, 2014 request for production of documents. Monroe claims that granting Gagan's motion to compel will create a conflict between the Arizona court and this court. However, as discussed above, this court retains

jurisdiction in this matter, the Arizona court dismissed the collection case for lack of jurisdiction, and the Arizona court's decision does not affect this court's jurisdiction. By relying on the same argument and providing no argument to show why the information is not subject to discovery, Monroe has failed to meet his burden that Gagan's June 25, 2014 request for production of documents is improper. Therefore, the court **GRANTS** Gagan's motion to compel Monroe to respond to the June 25, 2014 request for production of documents.

In addition to requesting the court to compel Monroe to respond to the June 25, 2014 request for production of documents, Gagan requests the court to order Monroe to pay the reasonable attorney's fees and expenses incurred in bringing the motion to compel. "The great operative principle of Rule 37(a)(5) is that the loser pays." Charles Alan Wright *et al.*, *8B Federal Practice and Procedure Civil* § 2288 (3d ed.). "Fee shifting when the judge must rule on discovery disputes encourages their voluntary resolution and curtails the ability of litigants to use legal processes to heap detriments on adversaries (or third parties) without regard to the merits of the claims." ***Rickels v. City of South Bend, Ind.***, 33 F.3d 785, 787 (7th Cir. 1994). Any loser may avoid payment by showing that his position was substantially justified. ***Rickels***, 33 F.3d at 787. The failure to disclose is sanctionable and properly remedied by an order compelling discovery. **Federal Rules of Civil Procedure 37(a)(3)(B), (a)(4), (a)(5)**; ***Lucas v. GC Services, L.P.***, 226 F.R.D. 328, 329-30 (N.D. Ind. 2004). Rule 37(a)(5)(A) states that the court shall require sanctions based upon the costs of seeking a motion to compel. *See **Stookey v. Teller Training Distributors, Inc.***, 9 F.3d 631, 637 (7th Cir. 1993) (citing the prior section number) ("Rule 37(a)(4) clearly allows for an award of the expenses incurred in obtaining an order to compel, including attorney's fees."). Sanctions under Rule 37(a)(5) are appropriate unless the movant filed the motion without attempting in good faith to obtain the discovery

without court action, the party's nondisclosure was "substantially justified," or other circumstances make an expense award unjust.  **Federal Rules of Civil Procedure 37(a)(5)(A)**.  In addition, Federal Rule 37(c)(1) states that a party who fails to disclose, provides false or misleading disclosure, or refuses to admit information required by Rule 26(a) without "substantial justification"  may be sanctioned unless such failure was "harmless."  *Musser v. Gentiva Health Services*, 356 F.3d 751, 755 (7th Cir.2004); *Salgado v. General Motors Corp.*, 150 F.3d 735, 742 (7th Cir.1998); *Engel v. Town of Roseland*, 2007 WL 2903196, *6 (N.D. Ind. Oct. 10, 2007).  Thus, Rule 37(a) is a fee-shifting rule, and the loser must pay unless it demonstrates that the movant filed the motion before attempting to obtain the discovery in good faith without court action, its position was "substantially justified," or other circumstances make an expense award unjust.

Gagan attached a certification indicating that counsel attempted to resolve this discovery dispute in good faith before filing the motion to compel.  On July 28, 2014, Gagan emailed Monroe regarding the June 25, 2014 request.  Monroe then called Gagan that day, but the parties did not resolve the discovery dispute.  On August 1, 2014, Monroe called Gagan regarding the discovery dispute, but the parties did not reach a resolution.

Therefore, Monroe must show that his position not to respond to the discovery request was "substantially justified" or that other circumstances make an expense award unjust.  In support of that argument, Monroe relies on the Arizona court's stay of discovery.  As discussed above, the Arizona court's decision does not affect this court, and this court already ruled it has jurisdiction over this matter.  Furthermore, the Arizona court dismissed the collection case for lack of jurisdiction on March 18, 2014, but Gagan did not serve the request for production until June 25, 2014.  Therefore, Monroe's position was not "substantially justified" because the

10

Arizona court issuing the stay of discovery already had dismissed the collection case when Gagan requested the discovery on June 25, 2014. Additionally, the court does not find any other circumstances that make a fee award unjust. Thus, the court **GRANTS** Gagan reasonable attorney's fees and expenses incurred in bringing this motion pursuant to Rule 37(a)(5). Gagan is **DIRECTED** to file an affidavit setting forth his fees and expenses within fourteen days of this order.

In addition to requesting the court to order Monroe to respond to the June 25, 2014 discovery request and to pay reasonable attorney's fees, Gagan requests the court to sanction Monroe by prohibiting him from objecting to the subpoena served on Monroe's accountant in Arizona. Rule 37(b)(2) gives the court authority to sanction a party for failing to comply with a court order and states in relevant part:

> (2) Sanctions in the District Where the Action Is Pending.
> (A) For Not Obeying a Discovery Order. If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
>
>> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>> (iii) striking pleadings in whole or in part;
>> (iv) staying further proceedings until the order is obeyed;
>> (v) dismissing the action or proceeding in whole or in part;
>> (vi) rendering a default judgment against the disobedient party; or
>> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

The authority to sanction a non-compliant party also arises from the court's inherent power to manage its cases and achieve orderly disposition. *See **Chambers v. NASCO, Inc.**,* 501 U.S. 32,

44, 47, 111 S. Ct. 2123, 2132, 2134, 115 L. Ed. 2d 27 (1991) (explaining that the court has broad inherent powers to sanction a party); *Barnhill v. United States*, 11 F.2d 1360, 1367 (7th Cir. 1993).

The court should consider several factors when determining which sanctions to employ, including: "the frequency and magnitude of the [party's] failure to comply with court deadlines, the effect of these failures on the court's time and schedules, the prejudice to other litigants, and the possible merits of the plaintiff's suit." *Rice v. City of Chicago*, 333 F.3d 780, 784 (7th Cir. 2003) (citing *Williams v. Chicago Bd. of Educ.*, 155 F.3d 853, 857 (7th Cir. 1998)). The sanctions must be proportional to the party's misconduct. *Collins v. Illinois*, 554 F.3d 693, 696-98 (7th Cir. 2009). The court measures this by weighing the proposed sanctions against the egregiousness of the party's conduct. *Barnhill*, 11 F.3d at 1368.

Monroe moved to quash the subpoena served on Gary Hirth, his Arizona accountant, in the Arizona federal court. To quash the subpoena, Monroe argued that the subpoena violated that court's order staying discovery. However, as discussed above, this court retains jurisdiction over this matter, the Arizona court dismissed the collection case, and the Arizona court's decision does not affect this court. Neither Monroe nor his accountant has provided Gagan with the requested documents since Gagan served the accountant in April 2014. Monroe's actions have deprived Gagan of the requested documents and caused this court to intervene and decide another discovery dispute. Therefore, in addition to ordering Monroe to respond to the June 25, 2014 discovery request, the court also **ORDERS** that Monroe withdraw his objection to the subpoena served on Monroe's Arizona accountant to produce documents and to produce the requested documents.

Gagan also requests the court to find Monroe in contempt for failing to respond to the written discovery as the court ordered in September 2012 and for transferring assets in violation of prior court orders. "To prevail on a request for a contempt finding, the moving party must establish by clear and convincing evidence that: (1) a court order sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply." *United States S.E.C. v. Hyatt,* 521 F.3d 687, 692 (7th Cir.2010). After the court identifies an unequivocal command that the party violated, the burden then shifts, and the party opposing the motion must demonstrate why he is unable to comply with the order. *United States v. Rylander,* 460 U.S. 752, 757, 103 S. Ct. 1548, 75 L. Ed. 2d 521 (1983). The court should not take the authority to hold a party in contempt lightly and should do so only when it is necessary to induce performance of a court order. *Electrical Workers Pension Trust Fund of Local Union # 58 v. Gary's Electrical Service Co.*, 340 F.3d 373, 378 (6th Cir. 2003) (citing *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 450, 31 S. Ct. 492, 55 L. Ed. 797 (1911)).

The court first addresses Gagan's request to hold Monroe in contempt for failing to comply with the court's order to respond to written discovery. The court's order of September 11, 2012 set forth an unambiguous command for Monroe to respond to written discovery requests. Monroe violated the court's command, and the violation was significant because it deprived Gagan of the requested documents. Furthermore, Monroe did not make a reasonable and diligent effort to comply but rather, relied on the Arizona court's stay of discovery to justify his failure to comply with this court's order. As discussed above, the Arizona court's stay of discovery does not affect this court. Furthermore, the Arizona court did not stay discovery until

after Monroe filed a motion to dismiss in the Arizona court on October 24, 2013. Therefore, Monroe attempts to rely on a different court's order issued more than one year after this court ordered him to respond to the discovery requests to justify his failure to comply with this court's order.

Furthermore, Monroe argues that he did not respond to the discovery request because the parties were engaged in settlement discussions. Monroe states the settlement negotiations continued for months following this court's September 11, 2012 order. However, Gagan emailed Monroe on April 9, 2014 regarding the outstanding September 2012 discovery request. On April 11, 2014, Monroe informed Gagan that he would respond to the September 2012 discovery request, but never provided a response. Gagan contacted Monroe again on April 28, 2014 and July 28, 2014. Additionally, the parties discussed the outstanding discovery on July 28, 2014 and August 1, 2014, but did not reach a resolution. Therefore, Monroe cannot rely on the parties settlement negotiations in 2012 and 2013 for his failure to comply with the court's September 11, 2012 order. Thus, the court **FINDS** Monroe in contempt for failing to comply with the court's order of September 11, 2012 to respond to written discovery.

Next, the court addresses Gagan's request to hold Monroe in contempt for transferring assets in violation of prior court orders. The court's order of September 21, 2012 set forth an unambiguous command to Monroe to refrain from transferring, encumbering, assigning, releasing, forgiving, and/or disposing of any assets wherever located. Gagan established that Monroe violated that order through a series of transactions after withdrawing $115,000 from his Oklahoma BancFirst account on September 20, 2012. For example, on October 24, 2012, Monroe negotiated a $30,000 BancFirst Check for $5,000 cash and two additional cashier's checks in the amounts of $5,000 and $20,000. On the same day, Monroe wrote a check to cash

for $3,239.48 from his BancFirst account. On January 9, 2013, Monroe cashed the $5,000 cashier check he acquired on October 24, 2012. Monroe completed similar transactions where he exchanged cashier's checks for cash and a smaller cashier's check on March 7th, 8th, and 11th of 2013. Additionally, Monroe issued checks of $10,000 to his daughter Lajunta Daniels and $5,000 to his daughter Kimberly Sullivan. That series of transactions demonstrates that Monroe violated this court's order of September 21, 2012.

Monroe's violations were significant because Monroe completed transactions that either transferred money from his account or made the money more difficult to trace. Monroe states that he mistakenly believed the court's order only applied to assets held within Indiana and that the above transactions did not violate the court's order because the assets were located outside the state. In support of that argument, Monroe claims that there is no evidence of transactions occurring after June 3, 2013, the date of the hearing where this court reiterated that its September 21, 2012 order applied to all of Monroe's assets. However, given that this court's order of September 21, 2012 clearly stated that it applied to any assets wherever located, the court finds that Monroe did not make a reasonable and diligent effort to comply with the court's order. Therefore, the court **FINDS** Monroe in contempt for violating the court's order of September 21, 2012 by transferring and disposing of assets.

Since the court has found Monroe in contempt for violating both its orders of September 11, 2012 and September 21, 2012, the court must determine any appropriate sanctions. "Judges have inherent authority to impose sanctions for misconduct by litigants, their lawyers, witnesses, and others who participate in a lawsuit over which the judge is presiding." ***S.E.C. v. First Choice Management Services, Inc.***, 678 F.3d 538, 543 (7th Cir. 2012). The court may issue coercive or remedial sanctions. ***Bailey v. Roob***, 567 F.3d 930, 933 (7th Cir. 2009). "Coercive

sanctions induce a party's compliance with a court order in the future, while remedial sanctions compensate an injured party for an opponent's past noncompliance." *Bailey*, 567 F.3d at 933. In civil contempt matters the sanction is generally a fine, an award of attorney's fees, or some other monetary extraction to compensate for the harm done. *Bailey*, 567 F.3d at 933. Additionally, if a court issues compensatory sanctions then the judge must justify the amount of the monetary sanction. *SEC v. First Choice Management Services*, 709 F.3d 685, 688 (7th Cir. 2013).

Upon finding Monroe in contempt for failing to comply with the court's order of September 11, 2012, Gagan requests the court to sanction Monroe by ordering him to respond to the written discovery. The court ordered Monroe to respond to this discovery on September 11, 2012, but Monroe has failed to comply with that order for over two years. Additionally, as discussed above, Monroe has failed to respond to other discovery requests based on the Arizona court's stay of discovery. By not responding to the discovery requests, Monroe continues to extend this case and prevents Gagan from collecting his judgment. Therefore, the court **ORDERS** Monroe to comply with the court's order of September 11, 2012 and to respond to Gagan's written discovery request.

Additionally, the court must determine the appropriate sanctions for Monroe's failure to comply with the court's order of September 21, 2012, which ordered Monroe to refrain from transferring or disposing of any of his assets. Gagan requests the court to sanction Monroe for $110,000 plus interest to compensate Gagan for money that Monroe transferred and dissipated. Furthermore, Gagan requests attorney's fees and expenses incurred to obtain this order. Monroe argues that he partially used the $110,000 in question for living expenses, but that he paid the remaining amount as part of a $175,000 payment certified with the Clerk in June 2013.

Therefore, Monroe requests the court to not issue any sanctions because that would allow Gagan to collect the same money twice.

Although Gagan presented sufficient evidence to establish that Monroe transferred assets after the court's order, Gagan has not sufficiently established that Monroe did not transfer the $110,000 in question as part of his payment certified with the Clerk in June 2013. Therefore, the court cannot award any compensatory sanctions because Gagan has not sufficiently established what amount he failed to collect because of Monroe's violations. Additionally, the court does not issue any punitive sanctions at this time because there is not sufficient evidence that Monroe has violated the court's order since June 3, 2013. Therefore, the court **AWARDS** Gagan attorney's fees and expenses incurred in bringing this motion and in identifying the transactions that violated the court's order is the appropriate sanction for Monroe's noncompliance with the court's order to not transfer or dispose of any assets. Gagan is **DIRECTED** to file an affidavit setting forth his attorney's fees and expenses and the fees and expenses he incurred as a result of locating and collecting the transferred assets within fourteen days of this order.

Monroe requests the court to order Gagan to file an accounting of all sums collected and to show any sums collected from defendants other than Monroe, all amounts collected in other causes based upon this case's judgment, and any interest accrued on the judgment or costs associated with collection activities. "Traditionally, 'equitable relief is discretionary,' whereas legal relief is not. Typical examples of equitable relief include an accounting or an injunction." *Int'l Fin. Servs. Corp. v. Chromas Techs. Can., Inc.*, 356 F.3d 731, 736 (7th Cir. 2004) (internal citations omitted).

Gagan obtained a judgment against the defendants in the amount of $1,710,000.00 plus 5.31% interest in 1994. Since that time Gagan has attempted to collect the judgment in multiple

jurisdictions and from multiple defendants. Additionally, Gagan has obtained orders for levy/sale/or turnover of multiple business enterprises that Monroe maintains an interest and collected payments on multiple dates. Although Gagan has collected payments from multiple defendants and business interests, Gagan estimates that the outstanding balance on the judgment now exceeds $2,000,000 once the accrued interest from over twenty years is included. Furthermore, Monroe has not demonstrated that he intends to pay off the remaining judgment or make consistent payments towards the judgment amount. Therefore, the court **DENIES** Monroe's request for an accounting on the remaining judgment balance.

In connection with his request for an accounting, Monroe requested the court to issue a partial satisfaction of the judgment upon the determination of any collections to date. However, because the court has denied Monroe's request for an accounting, the court **DENIES** Monroe's request for partial satisfaction as moot.

Based on the foregoing reasons, the Motion for Finding of Contempt and Sanctions and to Compel Discovery [DE 709] is **GRANTED in part and DENIED in part**, the Motion to Stay Discovery [DE 711] is **DENIED**, and the Motion to Provide Accounting and for Partial Satisfaction of Judgment [DE 714] is **DENIED**.

ENTERED this 10th day of November, 2014.

/s/ Andrew P. Rodovich
United States Magistrate Judge